OPINION OF THE COURT
Howard E. Goldfluss, J.
The defendant herein moves to suppress a statement alleged to have been made by him after he was read his Miranda rights. The question posed by this motion is unique because the statement sought to be introduced is alleged to have been overheard by a police officer while the defendant was in the process of using the telephone in the police squad room to call a relative. The People take the position that these statements were made voluntarily by the defendant — were not coerced— and that such statements are admissible.
The defendant sets forth two reasons for suppression. Primarily, he claims that the People have not fulfilled the requirement of CPL 710.30 (subd 1, par [a]), which mandates that the People serve notice of intention specifying the nature and substance of the statement sought to be offered.
*824 This court, after a Huntley hearing, determined that a statement made by the defendant subsequent to the recitation of the rights to him by the officer was voluntarily made. That statement is not the subject of this motion. We deal here with a totally unrelated overheard statement, as described. The defendant was not notified pursuant to CPL 710.30 (subd 1, par [a]), that such statement would be offered.
This latter statutory requirement requires notification only when the statement is in response to questioning by a public official and made to a public official. The testimony which was the basis of the issue herein results from the following portion of the police officer’s responses to questions put to him at the Huntley hearing.
"Q. Did you have any further conversation with him, Detective?
"A. I didn’t have a conversation with him. He was using the telephone.
"Q. What if anything was said on the telephone?
"A. Ah — he said — 'They didn’t pick me up just for the parole violation. It was for those other cases we were talking about.’ ”
The subsequent testimony adduced that the party at the other end of the telephone was the defendant’s brother. If this is an admission at all, it was made to a private person, overheard by a police officer. Under such circumstances, no notice of the offering of such testimony is required, and if he is not entitled to notice, his claim of surprise is unfounded.
However, this court is concerned more with the relevance and probity of the statement itself. In People v Potter (50 AD2d 410), the defendant was advised of his rights, and then the police set up a three-way telephone conversation involving the defendant, his girlfriend, and another. In that conversation, the girlfriend told the defendant that she had previously told the police that he, the defendant, was not with her at the time of the occurrence. The defendant responded by telling her not to sign a statement for the police. Thereafter, the defendant made certain inculpatory statements. In Potter (supra) the appellate court found no error in admission of the testimony derived from the three-way conversation, stating that the evidence was relevant, properly received, and more specifically, held that the jury could reasonably infer that the defendant’s request of the girlfriend not to sign a statement *825 evidenced a consciousness of guilt (see People v Ruberto, 10 NY2d 428).
Since consciousness of guilt was the basis of the court’s decision, it must be determined how that theory applies to the statement allegedly made by the defendant herein on the telephone. If the defendant’s statement is allowable, it would have to indicate that either his conduct or a statement made by him is indicative of a guilty mind. Moreover, the statement must bear on the issues of guilt or innocence of the defendant as to the crime with which the defendant is charged and must be relevant to those issues. Consciousness of guilt is a concept which implies an overt manifestation through demeanor, conduct, or acts such as attempted flight or any desire to elude discovery, or any anxiety to conceal a crime, or any evidence of it. (See People v Place, 157 NY 584.) Understandably, it could also be evidenced by, as in Potter (supra), an attempt to falsify an alibi. It would not be necessarily inadmissible because it tends to establish the defendant’s guilt of a crime other than the one charged, but its relevancy and materiality to such crime charged must be established.
The crucial statement sought to be introduced is "They didn’t pick me up for the parole violation. It was for those other cases we were talking about”. It would stretch the definition of relevancy to apply such statement to an unrelated robbery on a specific date and place, which is the basis for the indictment herein, but even if it were so applied, the prejudicial effect to the defendant would far outweigh the probative value that such vague statement would have. Common sense dictates that the reference to "other cases” would create an unlimited field of speculation by the jury as to the number of cases and type of cases he was referring to. The natural result to be expected is that the jury would conclude that the defendant had committed other crimes and a proclivity to commit the crime for which he was charged. This in turn would effectively deny the defendant a fair trial.
There is still another factor which should be discussed. In Potter, the defendant was party to the arrangement which set up the three-way conversation.
The facts vary here. This court is disturbed about the fact that the spirit and scope of the Miranda decision is put in jeopardy by the procedure followed in this case. The setting was custodial. The defendant was not advised nor was he aware that his words in that phone call could damn him. *826 What value, therefore, were his Miranda rights? In Weems v United States (217 US 349) the Supreme Court cautioned against "rights that were declared in words”, that were "lost in reality.” The entire aim of Miranda was to assure the defendant’s right to choose between speech and silence. Certainly, there can be an intelligent and knowing waiver of this right (see Conley v Cochran, 369 US 506; Glasser v United States, 315 US 60). But that waiver should not be effectuated through the back door. The Miranda concept is not a battle of wits. There is a threat to due process when an unsophisticated defendant is offered a right, and is eventually impaled by its usage.
Justice Brandéis, in his now famous dissent in Olmstead v United States (277 US 438, 485), stated: "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen.”
This mandate was adopted by the court in Miranda v Arizona (384 US 436) almost 40 years later and is the basis for present day standards relating' to the usage of statements made by the accused. It is better that we adhere to such standards as scrupulously as possible — bending backwards if necessary — to avoid shortcuts to conviction.