STATE OF CONNECTICUT *v.* LARRY FERRELL
(11232)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued May 5—decision released August 9, 1983

*Hyman Wilensky,* with whom were *Gary C. Grani* and, on the brief, *Robert L. Curzan,* for the appellant (defendant).

*Irving L. Aronson,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee (state).

SPEZIALE, C. J. The defendant, Larry Ferrell, was indicted by a grand jury for murder in violation of General Statutes § 53a-54a. After a trial to a jury of twelve before *Spallone, J.,* he was convicted as charged and sentenced to a term of fifteen years to life in prison. From that judgment he appealed to this court, claiming: (1) that the trial court erred in admitting testimony concerning telephone conversations between the defendant and his attorney which were overheard by police officers; and (2) that the state failed to present evidence from which an intent to kill could be inferred.[1]

---

[1] The defendant also claims error in the trial court's refusal to give certain requested jury instructions. Because the claim is not presented clearly enough for review; Practice Book § 3060F (a) (1); and because we order a new trial on other grounds, we will not discuss this claim of error further.

The jury could reasonably have found the following facts: The defendant and the victim, Dudley Olbrys, were both patrons at a bar in East Lyme on the evening of November 26, 1980. A dispute arose between them after the defendant blew a bird call in the bar. The dispute escalated and, as a result of a challenge issued by the victim, the two men went outside to the parking lot. A scuffle ensued and the defendant was knocked to the ground. Following a further verbal exchange each retreated to his own vehicle. The defendant took a shotgun from his pickup truck, loaded it, and cocked the hammer. The victim walked towards the defendant's vehicle, and the two faced each other across the tops of several cars. Within minutes, the victim was killed by a blast from the defendant's shotgun.

The defendant was arrested and taken to the Montville police barracks where he was read the rights prescribed in *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When the defendant asked for permission to call his attorney, Gary C. Grani, the police permitted him to use a telephone in the report room where his conversation could be overheard by police officers in the room. Troopers Thomas W. Sparkman and Joel Riley in fact listened to parts of the defendant's conversation with Grani. Grani arranged with Attorney Hyman Wilensky to telephone the defendant at the barracks, and Trooper Riley listened to the defendant's part of that conversation as well. Both conversations were tape recorded by the police.[2] At trial, over the defendant's objection,

---

[2] Riley testified that the telephone tape machine had a "beeper" on it that sounded approximately every fifteen seconds to warn callers that their conversations were being taped. The tape of the conversation with Grani, however, contains no identifiable beeping sounds during the one minute, fifty-three seconds of the conversation. The tape of the phone call from Wilensky does contain muted warning beeps.

Neither tape recording was admitted into evidence by the trial court.

both officers testified to inculpatory statements made by the defendant while talking with his attorneys. Sparkman testified that the defendant told Grani, "I shot a man. I had no other choice. He said he was going to shoot me three times. He said he had a forty-four." Riley testified that the defendant told Wilensky, "I killed him."[3]

## I

"You have a right to remain silent. If you talk to any police officer, anything you say can and will be used against you in court.

"You have a right to consult with a lawyer before you are questioned, and may have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you, if you wish, before any questioning.

"If you wish to answer questions, you have the right to stop answering at any time.

"You may stop answering questions at any time if you wish to talk to a lawyer, and may have him with you during any further questioning." Connecticut State Police Department, warning card, Form SP-344-C.

The United States Supreme Court, in *Miranda* v. *Arizona,* supra, 479, required that warnings similar to those above be given to an accused prior to custodial interrogation in order to effectuate the constitutional guarantee that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In the seventeen years since the *Miranda* decision, the *"Miranda* warnings" have come to be a routine component of most arrest situations. Although the *Miranda* warnings were originally effec-

---

[3] The tape recordings of the conversations demonstrate that both of these statements were made during the conversation with Grani, and that no arguably inculpatory statements were made during the later conversation with Wilensky.

tive in state prosecutions only because they were a component of due process of law under the fourteenth amendment; *Miranda* v. *Arizona,* supra, 463–65, *Malloy* v. *Hogan,* 378 U.S. 1, 3, 84 S. Ct. 1489; 12 L. Ed. 2d 653 (1964); they have also come to have independent significance under our state constitution. Conn. Const., art. I, § 8; *State* v. *Falby,* 187 Conn. 6, 11 and n.1, 444 A.2d 213 (1982). The warnings represent the belief, deep-seated in the Anglo-American legal tradition, that a person accused of a crime may be convicted only if exacting measures have been taken to assure that the accused has been treated with the most scrupulous fairness by agents of the government.[4]

The primary purpose of the *Miranda* warnings is to ensure that an accused is aware of the constitutional right to remain silent before making statements to the police. The purpose of including in the warnings the right to consultation with an attorney is to ensure that the defendant understands the law in order to make a knowing, intelligent, and voluntary decision whether to answer police inquiries or make voluntary statements. *Miranda* v. *Arizona,* supra, 469. Because of this emphasis on the role of the attorney as protector of an accused's constitutional rights; see *Fare* v. *Michael C.,* 442 U.S. 707, 719, 99 S. Ct. 2560, 61 L. Ed. 2d 197, reh. denied, 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1979); it is reasonable for an accused to believe that if he or she asks for an attorney after being read the *Miranda* warnings anything said to the attorney will be shielded from use against the accused at trial. The right to counsel before questioning is meaningless if a private and free discussion of the case is

---

[4] This aspect of the *Miranda* opinion is the due process component of the warnings announced by the court in that case. See, e.g., the application of due process analysis to a pre-*Miranda* self-incrimination case in *Malinski* v. *New York,* 324 U.S. 401, 416–17, 65 S. Ct. 781, 89 L. Ed. 1029 (1945) (Frankfurter, J.).

not permitted. Eavesdropping by the police or their agents makes a mockery of the right to consult counsel before being interrogated.[5] In fact, if police may listen to attorney-client discussions, as they did in this case, interrogation may not be necessary, for one accused of a crime often will tell the full story of the incident to the attorney at the first opportunity.

"The entire aim of *Miranda* was to assure the defendant's right to choose between speech and silence. Certainly, there can be an intelligent and knowing waiver of this right (see *Carnley* v. *Cochran,* 369 U.S. 506, 82 S. Ct. 884, 8 L. Ed. 2d 70 [1962]; *Glasser* v. *U.S.,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 [1942]). But that waiver should not be effectuated through the back door. The *Miranda* concept is not a battle of wits. There is a threat to due process when an unsophisticated defendant is offered a right, and is eventually impaled by its usage." *People* v. *Smith,* 100 Misc. 2d 823, 826, 420 N.Y.S.2d 132 (1979). "In order . . . to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights *and the exercise of those rights must be fully honored."* (Emphasis added.) *Miranda* v. *Arizona,* supra, 467.

In the case before us, the defendant's statements were not obtained by police interrogation or by any coercive measures appearing on the record. By his

---

[5] Although the sixth amendment right to counsel is not directly applicable to this case; *Kirby* v. *Illinois,* 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972); the due process concerns raised by the actions of the police here are essentially the same as those discussed in *Flaherty* v. *Warden,* 155 Conn. 36, 39, 229 A.2d 362 (1967), where we said: "The right to be represented by one's counsel in a proper postconviction proceeding is an integral and indispensable part of due process of law. A consultation is obviously necessary to enable the attorney to gain information so that he can properly advise his client. The right to consult with one's counsel includes the right to consult without being overheard, although under proper security safeguards."

request to call an attorney, however, the defendant had clearly indicated his intent not to give a statement. *Edwards* v. *Arizona,* 451 U.S. 477, 484–85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). Although the defendant's incriminating statements were not compelled, neither were they knowingly, intelligently, and voluntarily given to the police. Instead, the defendant's attempt to exercise his right to consult with an attorney resulted in the interception by the authorities of the very sort of incriminating statement which the *Miranda* warnings seek to guard against. The use at trial of statements obtained from the defendant while he was attempting to take up the protective shield of *Miranda* "deprived him of the due process of law by which he was constitutionally entitled to have his guilt determined." *Malinski* v. *New York,* 324 U.S. 401, 416, 65 S. Ct. 781, 89 L. Ed. 1029 (1945) (Frankfurter, J.); Conn. Const., art. I, § 8.

The court erred by admitting the testimony of police officers concerning telephone conversations between the defendant and his attorneys.[6] Because we hold that the use of that testimony deprived the defendant of a fair trial, a new trial is required.[7]

Our holding today does not overrule established law defining the scope of custodial rights. When a suspect

---

[6] In *State* v. *Vennard,* 159 Conn. 385, 406–407, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971), we upheld the admission of testimony by a police officer concerning a telephone conversation he overheard between the defendant and his attorney. The constitutional due process issue decided today was neither raised nor discussed in *Vennard,* which was decided on the basis of the attorney-client privilege. Because the result in *Vennard* is contrary to our holding today, it is overruled.

[7] Because the defendant in this case was in custody, we need not decide whether or to what extent a private consultation with an attorney must be provided to one being interviewed in pre-custodial investigative situations where the authorities encourage consultation with an attorney.

is taken into custody, the *Miranda* warnings must be given before any interrogation takes place.[8] Either explicitly or implicitly, the custodian will ask whether the suspect waives the right to silence. If the state demonstrates a knowing and intelligent waiver; *State* v. *Wilson,* 183 Conn. 280, 283–87, 439 A.2d 330 (1981); see also *State* v. *Harris,* 188 Conn. 574, 579–82, 452 A.2d 634 (1982); then any statements made to the police are not made inadmissible on *Miranda* grounds. If the accused expresses a desire to talk to a lawyer, however, the accused has invoked the right to silence and "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards* v. *Arizona,* supra, 484–85; *State* v. *Acquin,* 187 Conn. 647, 667, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983). Following such a request, authorities have three choices: They may simply hold the suspect for prompt arraignment,[9] without summoning an attorney, so long as no interrogation takes place;[10] they may call the attorney themselves; or they may permit the accused to make the

---

[8] If no questions are to be asked of an accused, no warnings are required. *Miranda* v. *Arizona,* 384 U.S. 436, 474, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[9] Practice Book § 635 and General Statutes § 54-1g require that a defendant who is not released from custody sooner shall be brought before a judicial officer for arraignment no later than the first court day following arrest.

[10] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and *Edwards* v. *Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378, reh. denied, 452 U.S. 973, 101 S. Ct. 3128, 69 L. Ed. 2d 984 (1981), merely forbid any further interrogation without counsel present, once the accused has requested counsel. No *right* to counsel attaches until prosecution has commenced. *State* v. *Ledbetter,* 185 Conn. 607, 609, 441 A.2d 595 (1981). The authorities may always ask questions necessary to discover which attorney the defendant wants to consult. *State* v. *Acquin,* 187 Conn. 647, 670, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983).

call.[11] If access to an attorney is permitted by either of the latter avenues, due process requires that the accused have a right to consult with the attorney to the extent reasonably necessary to effectuate the protections guaranteed by the fifth amendment to the United States constitution and by article first, § 8 of the Connecticut constitution. *Miranda* v. *Arizona,* supra, 479; *State* v. *Falby,* supra. As we stated above, the right to consult a lawyer before being interrogated is meaningless if the accused cannot privately and freely discuss the case with that attorney. Such discussion is only possible under conditions free from eavesdropping by the authorities. If the police have called the attorney, then they are obligated to provide an opportunity for a private consultation. These rules neither greatly restrict the ability of the police to investigate crime, nor do they require that every person arrested be permitted immediate stationhouse access to an attorney. *State* v. *Ledbetter,* 185 Conn. 607, 609–10, 441 A.2d 595 (1981). But once access is provided, privacy must be ensured. Statements obtained in violation of the privacy required to effectuate the *Miranda* rights may not be admitted into evidence against the defendant in the state's case in chief without violating the defendant's due process right to a fair trial. Conn. Const., art. I, § 8; see also U.S. Const., amend. XIV.[12]

## II

The defendant's next claim is that the state presented no evidence from which an intent to kill could be

---

[11] Connecticut law does not require, as some states do, that every defendant be permitted a phone call following arrest. See, e.g., Cal. Penal Code § 851.5 (Deering 1971).

[12] Our holding today is not only based on our interpretation of the fourteenth amendment to the United States constitution, but also is based on the alternate, independent state ground of the due process clause of the Connecticut constitution. Conn. Const., art. I, § 8; see *Michigan* v. *Long,* 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).

inferred. Although we order a new trial on the defendant's first claim of error, we must also address this claim, because if we were to rule that the evidence was insufficient, the defendant would be entitled to an acquittal rather than a new trial. *Burks* v. *United States,* 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

Construing the evidence in the light most favorable to sustaining the verdict, we must conclude that under the applicable standard of review; *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983); the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. The defendant questions only the sufficiency of the evidence on intent to kill. The jury had before it evidence that the defendant took his gun out of his truck, loaded it with buckshot and cocked it. The state's firearms expert testified that the gun had a "hammer block" which prevented the gun from being fired accidentally. It is undisputed that the gun discharged, killing the victim. From this evidence the jury could reasonably have found that the defendant intentionally killed the victim.

There is error, the judgment is set aside, and a new trial is ordered.

In this opinion the other judges concurred.