## STATE OF CONNECTICUT *v.* JERMAINE WOODS
## (SC 15688)

Callahan, C. J., and Borden, Berdon, Palmer, McDonald, Peters and Ment, Js.*

---

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 12—officially released October 12, 1999

*Elizabeth M. Inkster*, assistant public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara Eschuk*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Jermaine Woods, was convicted of murder in violation of General Statutes § 53a-54a (a)[1] and sentenced to fifty years imprisonment. He appealed his conviction directly to this court pursuant to General Statutes § 51-199 (b).[2] On appeal, the defendant raises two claims. First, he claims that the trial court improperly permitted the prosecutor to comment, during closing arguments, on the defendant's

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

failure to call his prior attorney to testify. Second, he claims that the trial court's instructions on self-defense inadequately advised the jury that the defendant's subjective belief that he was in imminent danger, even if mistaken, could justify his conduct.

We decline to review the defendant's first claim because it was not preserved properly at trial, and the defendant may not prevail on that claim under either the plain error doctrine or *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We conclude that the defendant's second claim is meritless and, therefore, affirm the judgment of conviction.

The jury reasonably could have found the following facts. In the early morning hours of November 5, 1994, the defendant and the victim, Jahmal Hall, began arguing in the vicinity of North Main and East Farm Streets in Waterbury.[3] Domingo Alves, a close family friend of Hall, placed himself between Hall and the defendant. Alves put his hands out, one toward Hall and one toward the defendant, in an effort to separate them. Hall stood calmly, but the defendant kept pushing against Alves, trying to reach Hall. Alves then lightly put both his hands on the defendant's chest to stop him from advancing. The defendant removed a gun from his pocket. When Alves saw the gun, he took a step back from the defendant. Hall stood still and appeared to be frightened. The defendant shot Hall once in the torso, then ran to his car. While driving away, the defendant told his cousin, James Bryan, who was waiting in the car, "I told him stop messing with me." Jahmal Hall later died from the gunshot wound.

At trial, the defendant claimed that he had shot Hall in self-defense. He testified that, on the night in question, he had been drinking and dancing at clubs with

[3] This area was a popular spot for people to socialize after the surrounding bars and clubs closed for the night, and there were approximately 100 people in the area on the night of Hall's murder.

Bryan. According to the defendant, Hall had given him a dirty look after the defendant danced with Hall's ex-girlfriend. The defendant claimed that, later that night, as he started to drive home, Hall yelled obscenities at him. The defendant then stopped the car and went to talk to Hall. The defendant further testified that a group with at least three large men, including Alves, who were friends with Hall, surrounded the defendant and began pushing and shoving him. The defendant testified that he had taken out the gun to scare these men away. According to the defendant, the gun then had discharged, either because someone had banged into it or because the defendant's finger had slipped on the trigger. After the gunshot, the defendant ran to his car. The defendant stated that he did not know whether the bullet had hit anyone until the day after the shooting, and that he had not intended to injure anybody.

William Henry Reid also testified for the defense. Reid stated that he had seen the defendant and Hall arguing on the night of the murder. Reid stated that a group of four or five individuals, all the same size as or larger than the defendant, had approached the defendant and Hall. According to Reid, those individuals had surrounded the defendant and began clutching and grabbing at him. Reid testified that he had heard a gunshot and had seen the defendant run to his car.

I

The defendant's first claim on appeal is that the trial court improperly permitted the prosecutor to comment, during closing arguments, on the defendant's failure to call an attorney (1993 attorney) who had represented him in 1993 to testify with respect to the defendant's diminished mental capacity. The defendant claims that the prosecutor's comment improperly allowed the jury to draw an adverse inference that the 1993 attorney's

testimony would have been unfavorable to the defendant; see *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960); and also violated his attorney-client privilege and right to counsel.

The following additional facts are relevant to the disposition of the defendant's first claim. In support of the defendant's claim that he acted in self-defense, the defendant presented evidence of his diminished mental capacity. Gregory St. John, an attorney who had represented the defendant in juvenile court on various matters from 1986 through 1990, testified that the defendant had been difficult to represent because the defendant was "slow." In St. John's opinion, it required a great amount of time and effort to explain matters to the defendant. St. John testified that he had never requested a competency evaluation for the defendant because he did not believe such an exam was necessary. Rosita Saucier, a guidance counselor with Waterbury Adult Education, also testified that the defendant did poorly on a 1993 standardized test of adult basic education.

On cross-examination, the defendant testified that, when facing criminal charges in 1993, he had been represented by counsel. During the court's charging conference; see Practice Book § 42-19; the prosecutor requested permission to comment, during closing arguments, on the defendant's failure to call the 1993 attorney to testify about the defendant's diminished mental capacity. The defendant's attorney objected on relevancy grounds, but the trial court granted the prosecutor's request.[4] During closing arguments, the prosecutor

---

[4] The following colloquy developed at the charging conference:

"[Cara Eschuk (Assistant State's Attorney)] . . . You will recall that I indicated that if the court was going to . . . give the diminished capacity charge, that I would wish to make reference to certain witnesses or potential witnesses who were not called. Your Honor requested that I obtain the information on which I based that remark and I believe Your Honor was handed a copy of the excerpt which makes reference to the fact that the defendant was in trouble in 1993 and was at that time working with an attorney. . . .

stated: "St. John told you [that he has had] clients who, just, you know, it's difficult to get through to them when it's something they don't want to hear. And maybe that could explain what happened. That was between 1986 and 1990. We know that the defendant was represented by an attorney in 1993. We haven't heard from that attorney. We haven't heard from anybody close to that time because the only time that it matters what the defendant's ability to form an intent was is November 4 and 5 of 1994. We don't need to worry about any other time.

"And we have had, in my submission, no evidence from any kind of professional whatsoever that the defendant was unable to form the intent to kill." The defendant did not object to the prosecutor's reference to the 1993 attorney at this point or request any curative instruction from the trial court.

---

"Well, Your Honor, I . . . would indicate that the state intends to point out to the jury that although an attorney was called who represented [the defendant] from 1986 to 1990, it appears that [the defendant] was represented in 1993 and no such attorney was called.

"The Court: You wish to argue that point?

"Ms. Eschuk: Yes, Your Honor. Since that is very similar to a *Secondino* matter and the state did not request the court to charge *Secondino*, I just thought that I would put the court on notice on that matter.

"The Court: Well, the record reveals that you asked the defendant on cross-examination if he worked with an attorney on that occasion, and his answer is yes. . . . Attorney Kennedy, do you wish to be heard?

"[Jayne F. Kennedy (Defense Counsel)] . . . I don't think it's an appropriate argument to be made. The state could have called his other attorney in rebuttal or attempted to. . . . [I]t wasn't relevant. We presented evidence sufficient to get a charge of diminished capacity and arguing what we didn't present, I don't think is appropriate.

"The Court: Thank you. Attorney Eschuk, I'll allow . . . you to point out to the jury the defendant's response to your question and I'll allow you to argue that no such attorney, of course, appeared in this case.

"Ms. Eschuk: Thank you, Your Honor.

"The Court: I caution you as to the implications of all that, however.

"Ms. Eschuk: I don't propose to take the matter much further than that, Your Honor."

On appeal, the defendant claims that the prosecutor's reference to the 1993 attorney improperly urged the jury to draw an adverse inference with respect to the defendant's failure to call that attorney to testify. See *Secondino* v. *New Haven*, supra, 147 Conn. 675.[5] The defendant argues that the trial court improperly granted the prosecutor permission to make this reference without the court first finding that the requirements of *Secondino* had been met.[6] The defendant also claims that the prosecutor's comment violated his attorney-client privilege and right to counsel.[7] We reject both of these claims.

First, we decline to address the defendant's claim that the prosecutor's comment was improper because it had not been established that the requirements of

[5] *Secondino* permitted trial courts to give instructions, known as *Secondino* or missing witness instructions, to the jury that it could draw an adverse inference from a party's failure to call a witness to testify at trial where the witness is available and naturally would be produced by that party. *Secondino* v. *New Haven*, supra, 147 Conn. 675. The jury would be instructed that it could draw an inference that the witness' testimony would be unfavorable to the party failing to call the witness. Counsel also were permitted to argue such an inference to the jury with the permission of the trial court. See *State* v. *Daniels*, 180 Conn. 101, 113, 429 A.2d 813 (1980). We recently abandoned the *Secondino* rule in criminal trials. *State* v. *Malave*, 250 Conn. 722, 738, 737 A.2d 442 (1999). We, therefore, need not address the defendant's additional claim that we should use our supervisory powers to abandon the *Secondino* rule in this case.

[6] Under *Secondino*, a missing witness instruction or argument was appropriate only if the missing witness was both available and a witness whom the party naturally would have produced. E.g., *State* v. *Shashaty*, 205 Conn. 39, 43, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988).

[7] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." The sixth amendment right to counsel is made applicable to the states through the fourteenth amendment due process clause. See generally *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1962).

Similarly, the constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

*Secondino* were met. Because the defendant did not object to the prosecutor's closing arguments on this ground at trial, he asserts that his claim is reviewable in this court under the plain error doctrine. See Practice Book § 60-5. We conclude, however, that the prosecutor's comment does not rise to the level of plain error.

The plain error doctrine of Practice Book § 60-5 requires a defendant to demonstrate "that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). "We repeatedly have observed that plain error is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id.

The prosecutor's comment does not constitute plain error. The prosecutor did not ask the jury to draw an adverse inference based on the absence of testimony from the 1993 attorney and, therefore, *Secondino* was not implicated. See *State* v. *Malave*, 250 Conn. 723, 739, 737 A.2d 442 (1999). As we stated in *Malave*: "So long as counsel does not directly exhort the jury to draw an adverse inference by virtue of the witness' absence, the argument does not fall within the *Secondino* rule . . . ." Id. The prosecutor's comment in this case merely highlighted the weakness of St. John's testimony, which related only to the years 1986 through 1990, in support of the defense of diminished mental capacity in 1994, the year that the crime in this case occurred. It was a proper comment on the weight of that evidence. Cf. *State* v. *Magnotti*, 198 Conn. 209, 220, 502 A.2d 404 (1985) (asking " '[w]hat about the [d]efense's case' " was "a comment . . . on the overall quality of the defendant's evidence and [did not call] specific attention to the [defendant's] failure . . . to testify"). Commenting on the weight of the evidence

and the weakness of the defendant's case constitutes proper argument. Thus, we decline to review the defendant's claim under the plain error doctrine.

We also do not reach the defendant's claim that the prosecutor's comment violated the defendant's attorney-client privilege and right to counsel. Although the defendant did not object to the prosecutor's closing arguments on these grounds at trial, he now contends that the claimed violations of the attorney-client privilege and right to counsel are reviewable under *State* v. *Golding*, supra, 213 Conn. 239–40. We disagree.

In *Golding*, we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. The first two requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail.

The defendant is not entitled to a review of his claim under *Golding* because it is not of constitutional magnitude. While the defendant claims that the prosecutor's comment violated his constitutional right to counsel, "merely placing a constitutional tag on a nonconstitutional claim does not make it so." (Internal quotation marks omitted.) *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997). During her argument, the prosecutor merely suggested that there were no witnesses,

whether the defendant's 1993 attorney or others, who testified about the defendant's mental capacity in 1993 or at any other time close to the date of the crime, i.e., November 5, 1994. The prosecutor's comment highlighted the defendant's failure to support his theory of diminished mental capacity with any contemporaneously relevant evidence. The defendant's constitutional right to counsel and attorney-client privilege for communications; see, e.g., *State* v. *Cascone*, 195 Conn. 183, 186, 487 A.2d 186 (1985); were not compromised by this comment.

Furthermore, we have held that "[w]e will not afford *Golding* review to claims of prosecutorial misconduct [in closing argument] where the record does not disclose a pattern of misconduct . . . that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994). "[C]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line . . . ." (Internal quotation marks omitted.) Id. Therefore, "we must review the comments complained of in the context of the entire trial. . . . [T]he burden is on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citations omitted.) *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993). In this case, the prosecutor mentioned the 1993 attorney only once, as one possible witness to the defendant's mental capacity in 1993. Even if we assume that the prosecutor's comment was improper, it was not so egregious as to infringe upon the defendant's right to a fair trial.

Finally, we note that, prior to making her comment, the state's attorney sought and received permission from the trial court. This permitted judicial review and

gave the defendant fair notice of the comment. See *State* v. *Malave*, supra, 250 Conn. 740.

We conclude that the prosecutor's comment during closing arguments did not improperly urge the jury to draw an adverse inference with respect to the absence of testimony from the 1993 attorney. Thus, the defendant's claim is not reviewable under the plain error doctrine. We also conclude that the defendant's claim that the comment violated his attorney-client privilege and right to counsel is not entitled to review under *Golding*.

## II

The defendant also claims that the trial court's instructions on self-defense were improper.[8] We disagree.

---

[8] The court's instruction covering the defendant's claim of self-defense provides in relevant part: "The statute on self-defense focuses on the person claiming self-defense. It focuses on what he reasonably believed under the circumstances and presents a question of fact for the jury. In other words, what is important is what the defendant reasonably believed under the circumstances in this case. The test for the degree of force in self-defense is a subjective-objective test, meaning it has some subjective aspects and some objective aspects. Self-defense thus requires the jury to measure the justifiability of the defendant's actions from a subjective perspective, that is, what the defendant reasonably believed under the circumstances presented in this case, and on the basis of what the defendant perceived the circumstances to be. [General Statutes §] 53a-19 (a) requires, however, that the defendant's belief must have been reasonable and not irrational or unreasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached that belief? That is the objective aspect of the test. It is both a question of what his belief was and whether it was reasonable. In this case, if you find proven beyond a reasonable doubt that the persons the defendant claimed were surrounding him on the street immediately before the shot was fired were not using or about to use deadly, physical force or to inflict great bodily harm upon him, and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that those persons were using or about to use deadly, physical force or about to inflict great bodily harm upon him, then . . . you would, under those conditions, reject the defense of self-defense."

In reviewing a challenge to the trial court's instructions, "we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 509, 659 A.2d 1194 (1995). "When considering a claim of failure to deliver a requested charge . . . [t]he court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." (Citations omitted.) *State* v. *Diggs*, 219 Conn. 295, 298–99, 592 A.2d 949 (1991).

The defendant claims that the trial court improperly failed to give his requested instruction pertaining to the defense of mistake of fact.[9] "The defense of mistake of fact is available under General Statutes § 53a-6 (a), which provides in relevant part: 'A person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact, unless: (1) Such factual mistake negates the mental state required for the commission of an offense . . . or (3) such factual mistake is of a kind that supports a defense of justification.' A mistake of fact exists 'when one makes an erroneous perception of the facts as they actually exist. . . . The defense arises only where the defendant misperceives an objective state of existing fact . . . .' " *State* v. *Beltran*, 246 Conn. 268, 273–74, 717 A.2d 168 (1998).

An instruction on the defense of mistake of fact is required only when evidence supporting it is placed

---

[9] The defendant submitted a written request to charge that included the following language: "In judging the danger to himself, however, the defendant is not required to act with infallible judgment. Ordinarily one exercising the right of self-defense is required to act instantly and without time to deliberate and investigate. Under such circumstances, of course, it's possible, often possible, to mistake an actual threat when none in fact existed."

before the jury. Id., 274. In this case, as in *Beltran*, the defendant did not present any evidence at trial that he had shot Hall under any mistaken belief that he was being attacked. The state's case was that the defendant shot Hall during a verbal argument and with little provocation. The defendant, on the other hand, testified that a group of large men had surrounded him and were physically attacking him when he shot Hall. The defendant testified that he believed that deadly force was necessary to protect himself from imminent harm. Reid also testified that the defendant was being attacked when the shot was fired. The defendant did not present any evidence showing that he misperceived that he was being attacked. His request to charge, however, was based on the fact that he may have misperceived a threat when none had existed. The defendant, therefore, was not entitled to an instruction with respect to the defense of mistake of fact.

Moreover, the trial court's charge adequately instructed the jury that it was required to consider the defendant's subjective belief that he was in danger. The charge did not purport to require the defendant's subjective belief to be correct, but only reasonable. The court instructed the jury that "[t]he statute on self-defense focuses on the person claiming self-defense. It focuses on what he reasonably believed under the circumstances and presents a question of fact for the jury. In other words, what is important is what the defendant reasonably believed under the circumstances in this case. . . . Self-defense thus requires the jury to measure the justifiability of the defendant's actions from a subjective perspective, that is, what the defendant reasonably believed under the circumstances presented in this case, and on the basis of what the defendant perceived the circumstances to be." The trial court properly instructed the jury to focus on the defendant's subjective belief that he was in danger. The jury,

therefore, properly was instructed that an honest and reasonably held belief that deadly force is necessary to repel an imminent attack would be justifiable self-defense.

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN, PALMER, PETERS and MENT, Js., concurred.

BERDON, J., dissenting. In the present case, the trial court permitted the prosecutor in his closing argument to urge the jury to draw an adverse inference from the accused's decision not to call as a witness an attorney who had previously represented him. In my view, this ruling violated the defendant's right to counsel under both the federal constitution and our state constitution.[1]

On November 5, 1994, the defendant, Jermaine Woods, was responsible for a fatal shooting. On trial for murder, the defendant argued that—because of his diminished mental capacity—he had believed that he was acting in self-defense. The majority explains that "Gregory St. John, an attorney who had represented the defendant . . . from 1986 through 1990, testified [on direct examination by defense counsel] that the defendant had been difficult to represent because the defendant was 'slow.' In St. John's opinion, it required a great amount of time and effort to explain matters to the defendant."[2]

In its closing argument to the jury, the state emphasized that St. John had not interacted with the defendant

---

[1] For the text of these constitutional provisions, see footnotes 3 and 4 of this dissent.

[2] In the brief that he submitted to this court, the defendant also emphasized the following evidence: "Rosita Saucier, a guidance counselor with Waterbury Adult Education, also testified to [the defendant's] level of function, as measured by his grade equivalent scores on the standardized Test of Adult Basic Education. . . . These scores were abysmal. For example, in 1993, a year before the incident at issue here, [the defendant] tested out at a 3.4 (third grade-fourth month) vocabulary level."

for several years prior to 1994, the year of the shooting. The state then referred to the defendant's testimony, during cross-examination, that: (1) he had entered a plea bargain in an unrelated criminal matter in 1993; and (2) he had been represented by counsel at that time. With the express permission of the court, the state then made the following argument: "We know that the defendant was represented by an attorney in 1993. *We haven't heard from that attorney. . . .* [T]he only time that it matters what the defendant's ability to form an intent was is November 4 and 5 of 1994. We don't need to worry about any other time." (Emphasis added.) In my view, this argument violated the defendant's right to counsel, which is protected by the sixth amendment of the United States constitution[3] and article first, § 8, of the Connecticut constitution.[4]

"Th[e] constitutional right to . . . effective assistance of counsel is one of those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'[5] *Powell* v. *Alabama,* [287

---

[3] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

[4] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

[5] "When the customary right to counsel was formally incorporated into the Connecticut constitution in 1818, the advice and services of counsel were regarded as crucial to a criminal defendant . . . . More contemporary developments suggest that this state's commitment to securing the right to counsel has not diminished since 1818. Not only was Connecticut the first state to adopt the public defender system; *State* v. *Hudson,* 154 Conn. 631, 635, 228 A.2d 132 (1967); but the right to counsel was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [(1962) (holding that the fourteenth amendment incorporated the sixth amendment right to counsel)] . . . . *Spring* v. *Constantino,* 168 Conn. 563, 566–67 n.2, 362 A.2d 871 (1975). The United States Supreme Court has turned to the historical experience of Connecticut in expanding the right to counsel under the federal constitution. *Faretta* v. *California,* 422 U.S. 806, 827, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Powell* v. *Alabama,* [287 U.S. 45, 62–63, 53 S. Ct. 55, 77 L. Ed. 158 (1932)]." (Citation omitted; internal quotation marks omitted.) *State* v.

U.S. 45, 67, 53 S. Ct. 55, 77 L. Ed. 158 (1932)]." *Palmer* v. *Adams*, 162 Conn. 316, 320, 294 A.2d 297 (1972). "It is . . . settled beyond question that, under both the federal and the state constitutions, th[e] right to the assistance of counsel includes the right to communicate effectively with counsel in the preparation of one's defense. *State* v. *Mebane*, 204 Conn. 585, 603, 529 A.2d 680 (1987), cert. denied, 484 U.S. 1046, 108 S. Ct. 704, 98 L. Ed. 2d 870 (1988) . . . *State* v. *Ferrell*, 191 Conn. 37, 42 n.5, 463 A.2d 573 (1983) . . . *Flaherty* v. *Warden*, 155 Conn. 36, 39, 229 A.2d 362 (1967) . . . . [T]he denial of [this right] . . . could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. *Avery* v. *Alabama*, 308 U.S. 444, 446, 60 S. Ct. 321, 84 L. Ed. 377 [1940]; *Chambers* v. *Maroney*, 399 U.S. 42, 59, 90 S. Ct. 1975, 26 L. Ed. 2d 419 [1970]. *State* v. *Greene*, 161 Conn. 291, 296, 287 A.2d 386 (1971)." (Internal quotation marks omitted.) *Washington* v. *Meachum*, 238 Conn. 692, 731, 680 A.2d 262 (1996).

The threads of "the right to communicate effectively with counsel in the preparation of one's defense"[6] are interwoven with the threads of the attorney-client privilege, which protects any conversation that is "necessary to obtain informed legal advice . . . ."[7] *Ullmann* v.

*Stoddard*, 206 Conn. 157, 165, 537 A.2d 446 (1988); see also *State* v. *Piorkowski*, 243 Conn. 205, 217, 700 A.2d 1146 (1997).

[6] *Washington* v. *Meachum*, supra, 238 Conn. 731.

[7] As the United States Supreme Court emphasized just last year, the attorney-client privilege "is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin* v. *United States*, 524 U.S. 399, 118 S. Ct. 2081, 2084, 141 L. Ed. 2d 379 (1998). "It is important not to weaken the privilege . . . because, as the United States Supreme Court has explained, even the threat of disclosure would have a detrimental effect on attorneys' ability to advocate for their clients while preserving their ethical duty of confidentiality. *Hickman* v. *Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 91 L. Ed. 451 (1947) (where threat of disclosure . . . 'the interests of the clients and the cause of justice [are] poorly served')." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 48–49, 730 A.2d 51 (1999). Connecticut, in particular, "has a long-standing, strong public policy of

*State*, 230 Conn. 698, 713, 647 A.2d 324 (1994). Together, they form a single fabric.[8] The trial court's ruling in the present case was a dagger that slashed this fabric to shreds. In the process, it converted into a sham the cluster of constitutional guarantees associated with the right to counsel and the attorney-client privilege.

In *State* v. *Toste*, 178 Conn. 626, 424 A.2d 293 (1979), this court considered facts that are less egregious than those that are presently before us. The defendant in *Toste* argued that the trial court erred by admitting the testimony of a psychologist who had "examined the defendant pursuant to a defense motion but was called to testify as a state's witness." Id., 627–28. More specifically, "[t]he defendant contend[ed] that the admission of [the psychologist's] testimony violated the attorney-client privilege *and, thus, the defendant's sixth amendment right to the assistance of counsel*." (Emphasis added.) Id., 628. The court adopted this argument, concluding that "[t]he court's admission of [the psychologist's] testimony as a state's witness was in error." Id.

If it violates the right to counsel to admit into evidence the adverse testimony of a psychologist retained to assist defense counsel in preparing his case, then it follows a fortiori that it must violate the right to counsel to permit the state to urge the jury to infer that the

protecting attorney-client communications. See, e.g., *Doyle* v. *Reeves*, 112 Conn. 521, 523, 152 A. 882 (1931) (quoting common-law rule embodied in 5 J. Wigmore, Evidence [2d Ed. 1923] § 2292)." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 48.

[8] To make the same point without metaphor, it is impossible to "communicate effectively with counsel" unless you are shielded by the protection of the attorney-client privilege, which "was designed, in large part, to encourage full disclosure by a client to his or her attorney *so as to facilitate effective legal representation. State* v. *Cascone*, 195 Conn. 183, 188, 487 A.2d 186 (1985)." (Emphasis added.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 48, 730 A.2d 51 (1999).

testimony of a former attorney would have been unfavorable.[9] In short, by invading the sanctity of the relationship between the defendant and his former attorney, the trial court in the present case violated the defendant's right to counsel under the federal constitution and our state constitution.

The majority attempts to justify its refusal to review the defendant's claim with the argument that he did not properly object at trial. This is simply untrue. The defendant's trial counsel made a timely objection that was clear and unambiguous, albeit not phrased in the terminology of constitutional discourse.[10] It is beyond question that the trial court had ample notice of the defendant's claim.

Even if I were mistaken in my belief that the defendant's argument adequately is preserved, we would nevertheless be obligated to reach the defendant's claim under *Golding*, which sets forth the rules that govern our review of unpreserved arguments. *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The majority claims that *Golding* review is inappropriate because the defendant's claim is "not of constitutional magnitude." Since both the federal constitution and our state constitution explicitly protect the right to counsel, the majority's argument is unavailing.[11] Moreover, *Golding* review

---

[9] It is apparent that the threat of such an argument would have a chilling effect on the defendant's "right to communicate effectively with counsel in the preparation of [his] defense." *Washington* v. *Meachum*, supra, 238 Conn. 731. Although a defendant may have access to a person with a law degree, he justifiably will be afraid of communicating effectively with that person if such communication may later be used against him.

[10] The defendant's trial counsel asserted the following argument: "I don't think it's an appropriate argument to be made. The state could have called [the defendant's] other attorney in rebuttal or attempted to [do so]. . . . [I]t wasn't relevant. We presented evidence sufficient to get a charge of diminished capacity, and arguing what we didn't present I don't think is appropriate."

[11] The majority also invokes this court's policy of declining to "afford *Golding* review to claims of prosecutorial misconduct . . . where the record does not disclose a pattern of misconduct . . . that was so blatantly

is particularly appropriate in the present case because the defendant's specific objection at trial alerted the trial court to the issue that the majority declines to reach.

For these reasons, I would reverse the trial court's judgment and order a new trial. Accordingly, I dissent.

---

egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) In my view, the violation of the defendant's rights under both the federal constitution and our state constitution is so blatantly egregious that it per se infringes on his right to a fair trial. This conclusion is unaffected by the fact that the prosecutor in the present case managed to violate the defendant's constitutional rights without engaging in a lengthy pattern of misconduct.